UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIN A. CHACON,<br><br>    Plaintiff,<br><br>  vs.<br><br>J. CERRINI, et al.,<br><br>    Defendants. | 1:11-cv-01689-GSA-PC<br><br>ORDER DISMISSING DUE PROCESS CLAIMS BASED ON GANG REVALIDATION FROM THIS ACTION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER SECTION 1983, WITH LEAVE TO FILE A HABEAS PETITION<br><br>ORDER DISMISSING CLAIMS ARISING FROM EVENTS AT SAN QUENTIN STATE PRISON FOR IMPROPER VENUE, WITH LEAVE TO FILE CASE IN NORTHERN DISTRICT OF CALIFORNIA<br><br>ORDER FOR PLAINTIFF TO EITHER:<br>  (1)  FILE A SECOND AMENDED COMPLAINT, OR<br>  (2)  NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND COGNIZABLE BY THE COURT<br><br>THIRTY-DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED |

**I.   BACKGROUND**

Edin A. Chacon ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. On January 10, 2011, Plaintiff filed the Complaint commencing this action. (Doc. 1.)

1

On November 7, 2011, Plaintiff consented to the jurisdiction of a Magistrate Judge in this action, and no other parties have made an appearance. (Doc. 14.) Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

The Court screened the Complaint pursuant to 28 U.S.C. § 1915A and entered an order on April 13, 2012, dismissing the Complaint for violation of Rule 8, with leave to amend. (Doc. 20.) On May 3, 2012, Plaintiff filed an Amended Complaint, which is now before the Court for screening. (Doc. 22.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id.

///

2

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III.   SUMMARY OF AMENDED COMPLAINT

Plaintiff is presently incarcerated at California Correctional Institution ("CCI") in Tehachapi, California. The events at issue in the Amended Complaint allegedly occurred at San Quentin State Prison ("SQSP") in San Quentin, California, and at CCI. Plaintiff names as defendants Correctional Officer ("C/O") J. Cerrini, E. Patao (Institutional Gang Investigator ("IGI")), T. Amrhein-Conama (IGI Lieutenant), C/O T. Crouch, Lieutenant J. Tyree, K. Sampson (Appeals Coordinator), C/O Rivera, and Adame (IGI). Plaintiff's factual allegations follow.

*San Quentin State Prison (SQSP)*

From December 11, 2008 through February 18, 2009, Plaintiff was housed in the Security Housing Unit ("SHU") at SQSP, to attend trial pro se for a lawsuit he filed against prison staff. Defendant C/O Cerrini refused to bring Plaintiff his legal materials to prepare for trial, used threatening language against Plaintiff, pushed and kicked Plaintiff, shoved a breakfast tray at Plaintiff, and called Plaintiff a stool pigeon in front of other prisoners, because Plaintiff had filed a lawsuit against officers. Cerrini also turned in a list to the Institution Security Unit, falsely claiming that he found the list during a search of Plaintiff's cell. Cerrini's false claim was used by defendant Pateo to revalidate Plaintiff [as a gang member] at an inactive status review hearing. Plaintiff was not given adequate notice of the charges against him to prepare a defense. As a result, Plaintiff was sentenced to an indefinite SHU term. On March 1, 2009, Plaintiff filed an administrative appeal, but due to Cerrini's failure to cooperate, Plaintiff was unable to prepare a defense against his revalidation.

*California Correctional Institution (CCI)*

On December 24, 2009, Plaintiff returned to CCI. Defendant Crouch interviewed Plaintiff and told him he was going to revalidate him, based on 128-b Chrono documents from SQSP. Plaintiff requested that defendant Cerrini be called as a witness, and that Plaintiff be given a rules book and the applicable rules violation numbers, so Plaintiff could defend himself, but Crouch denied these and other

3

similar requests. Crouch said, "That's not my problem, you're the jailhouse lawyer, you just came from suing the state, don't ask me for help." (Second ACP at 9 ¶38.) Plaintiff was left with no knowledge of the precise charges against him. Crouch made additional remarks indicating he would not assist Plaintiff because of the lawsuit Plaintiff had filed. Plaintiff was again revalidated and sentenced to an indefinite SHU term.

Plaintiff filed an inmate appeal on July 29, 2009 and was interviewed by defendant Tyree at the second level of review. Plaintiff explained about defendant Crouch's bias because of the lawsuit and requested assistance to obtain a statement from Cerrini and check the log books, but Tyree denied the requests. Tyree told Plaintiff, "If Crouch denied you, I'm not going to grant you anything either, he works for me and I'm not going against him. He's right, your mistake was filing your lawsuit. And your last appeal on Crouch is only going to hurt your chances of ever getting out of the SHU, so your best bet is to debrief and give up all your information on your friends." (Second ACP at 10 ¶52.) Plaintiff's appeal was denied and exhausted.

On November 15, 2009, Plaintiff filed a staff complaint against defendant Cerrini, and a hearing was held by defendant Conama [from SQSP], who interviewed Plaintiff by phone. Conama told Plaintiff that Cerrini said he did not find the list in Plaintiff's cell. Plaintiff requested help to show that the hearing at SQSP was unfair, but Conama said, "I'm not going to use anything, I denied you on your last appeal about the 128-b Chrono and I'm going to deny you here." (Second ACP at 12 ¶72.) No further inquiries were made, and the evidentiary findings were not addressed by Conama.

On October 5, 2009, Plaintiff submitted another appeal regarding Pateo's account of the cell search on the 128-b Chrono. Conama, who knew Pateo, gave a false statement that it was Cerrini and not Pateo who actually authored the Chrono, and denied Plaintiff's appeal for that reason.

On February 12, 2010, while housed in the SHU, Plaintiff asked Lt. Noyce of the IGI to review Plaintiff's revalidation in light of new evidence. Noyce told Plaintiff he would review it as long as Plaintiff submitted a new administrative appeal. On February 15, 2010, Plaintiff submitted a new administrative appeal, and defendant Sampson improperly rejected the appeal, telling Plaintiff to pursue

///

his appeal at the other institution where the 128-b Chrono had been written. Because of this rejection, Plaintiff's appeal was not forwarded to Lt. Noyce for review.

Because of the revalidation, Plaintiff's status was changed and nine months were added to his sentence. Plaintiff filed an appeal regarding his change of status, and defendant Sampson rejected the appeal for improper reasons.

On June 24, 2010, while Plaintiff was at the exercise cage, defendant Rivera searched Plaintiff's cell and confiscated Plaintiff's personal properly, following instructions from the IGI at SQSP. On or about July 19, 2010, defendant Rivera came to Plaintiff's cell, opened the tray slot, and started throwing Plaintiff's personal property (torn paperwork) into the cell and said, "That's just to show you, you submit paperwork on my partners in San Quentin, I'm going to tear yours up." (Second ACP at 16 ¶109.) Plaintiff complained about the torn paperwork, and Rivera told him that he had had enough of Plaintiff and would be back for more. On July 20, 2010, defendant Rivera came back and confiscated all of Plaintiff's personal property and Plaintiff's cell mate's personal property, telling Plaintiff, "Maybe this will teach you not to complain and maybe your cell mate will put you on check too." (Second ACP at 16 ¶113.) When Plaintiff's personal property was returned to him, some of the documents were missing and some of the paperwork was torn again. Defendant Adame returned the property and told Plaintiff that he and Rivera had both torn the papers. He told Plaintiff that sooner or later he would remember him, when his next inactive status comes around and he's stuck in the SHU. On June 25, 2010, defendant Adame created a 128-b Chrono falsely alleging that Plaintiff was involved in illegal activities, for the purpose of revalidating Plaintiff at his inactive status review and to keep Plaintiff in the SHU.

On October 7, 2011, Plaintiff spoke to defendant Crouch and told him he was going to be a defendant in his lawsuit. Crouch told Plaintiff, "These stupid lawsuits are what got you in this mess in the first place, these courts don't care about your shitty complaints, your best bet is to cut your lawsuit crap out, if I get called as a defendant you will see how we really do things around here." (Second ACP at 22 ¶121.)

Plaintiff requests monetary, declaratory, and injunctive relief, including expungement of the revalidation and release back to the general population with restoration of all rights and privileges.

**IV.     PLAINTIFF'S CLAIMS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

**A.     Due Process Violations Based on Gang Revalidation – Habeas Corpus**

When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475 (1973); Young v. Kenny, 907 F.2d 874 (9th Cir. 1990), cert. denied 11 S.Ct. 1090 (1991). "[A] state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-2, 125 S.Ct. 1242, 1248 (2005).

Plaintiff brings a due process claim based on the process used to revalidate him as a gang member, which resulted in a SHU term and nine months increase in his sentence. Plaintiff clearly challenges his sentence, seeking the expungement of the revalidation and restoration of all rights and privileges. Success on this claim would necessarily demonstrate the invalidity of confinement or its duration. Therefore, Plaintiff's sole federal remedy is a writ of habeas corpus, and the Court shall dismiss this claim from this action, with leave to file a petition for writ of habeas corpus.

**B.     Improper Venue for Claims Arising at SQSP**

Plaintiff's claims arise from events occurring at SQSP and CCI. Plaintiff's claims arising from events at CCI are proper in this district because CCI is located in Tehachapi, California, which lies within the Eastern District of California. However, venue for Plaintiff's claims arising out of events at

SQSP is not proper in this district because San Quentin is located within the Northern District of California, and those claims may not be pursued in this action. Therefore, Plaintiff's claims against defendants Cerrini, Patao, and Amrhein-Conama, employees at SQSP, shall be dismissed from this action for improper venue. See Costlow v. Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986) (court may raise defective venue sua sponte); see also Davis v. Mason County, 927 F.2d 1473, 1479 (9th Cir. 1991) (courts have broad discretion regarding severance). If Plaintiff wishes to pursue the claims arising at SQSP, he may file a new action in the Northern District of California.

### C. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (quotation marks omitted); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

The Court finds that Plaintiff states cognizable claims for retaliation against defendants Crouch, Tyree, Rivera, and Adame.

### D. Appeals Process

Plaintiff alleges that some of the defendants failed to respond properly to his inmate appeals. Defendants' actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore,

638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing a prisoner's administrative appeal, without more, are not actionable under section 1983. Buckley, 997 F.2d at 495. Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails to state a cognizable claim for the processing and/or reviewing of his inmate appeals.

## V.  CONCLUSION

Based on the foregoing, the Court finds that Plaintiff's First Amended Complaint states cognizable claims against defendants Crouch, Tyree, Rivera, and Adame for retaliation in violation of the First Amendment. However, Plaintiff fails to state any other claims upon which relief can be granted under section 1983 against any of the defendants.[1] Plaintiff shall be required to either file a Second Amended Complaint, or notify the Court of his willingness to proceed only on the retaliation claim against defendants Crouch, Tyree, Rivera, and Adame. Should Plaintiff choose to proceed only on the retaliation claims, the Court will begin the process to initiate service upon defendants Crouch, Tyree, Rivera, and Adame by the United States Marshal.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires.'" The Court will provide Plaintiff with time to file a Second Amended Complaint curing the deficiencies identified above should he wish to do so. Plaintiff is granted leave to file a Second Amended Complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Should Plaintiff choose to amend the complaint, the Second Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior*

---

[1] As discussed above, Plaintiff fails to state a due process claim under § 1983 based on his gang revalidation, and this claim shall be dismissed from this action, with leave to file a petition for writ of habeas corpus. Should Plaintiff choose to file a petition for writ of habeas corpus, it will be a new and separate case, and Plaintiff should not refer to this action or use the case number for this action. When the petition for writ of habeas corpus is filed, the Clerk shall assign a new case number.

8

1 liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677.
2 Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.
3 Jones, 297 F.3d at 934 (emphasis added). Plaintiff is reminded that twenty-five pages is more than
4 sufficient for Plaintiff to identify his claims and set forth specific facts in support of those claims.
5 Accordingly, the amended complaint may not exceed twenty-five pages in length, and it will be stricken
6 from the record if it violates this page limitation.

7 With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P.
8 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). The Court
9 strongly suggests to Plaintiff that they should not be submitted where (1) they serve only to confuse the
10 record and burden the Court, or (2) they are intended as future evidence. If this action reaches a juncture
11 at which the submission of evidence is appropriate and necessary (e.g., summary judgment or trial),
12 Plaintiff will have the opportunity at that time to submit his evidence

13 Plaintiff is reminded that although he has been given the opportunity to amend, it is not for the
14 purposes of adding new defendants for unrelated issues. In addition, Plaintiff should take care to include
15 only those claims that have been administratively exhausted.

16 If Plaintiff decides to file an amended complaint, he is reminded that an amended complaint
17 supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012)(en
18 banc), and it must be complete in itself without reference to the prior or superceded pleading. Local
19 Rule 220. Once an amended complaint is filed, the prior complaint no longer serves any function in the
20 case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement
21 of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly
22 titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed
23 under penalty of perjury.

24 Based on the foregoing, it is HEREBY ORDERED that:
25 1. Plaintiff's due process claim based on his gang revalidation is DISMISSED from this
26 action for failure to state a claim upon which relief may be granted under § 1983, with
27 leave to file a petition for writ of habeas corpus;
28

2. Plaintiff's claims against defendants Cerrini, Patao, and Amrhein-Conama, arising from events at San Quentin State Prison, are DISMISSED from this action for improper venue, with leave to file a case in the Northern District of California;

3. The Clerk's Office shall send Plaintiff a civil rights complaint form and a form petition for writ of habeas corpus;

4. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:

   (1) File a Second Amended Complaint curing the deficiencies identified in this order, or

   (2) Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the retaliation claims against defendants Crouch, Tyree, Rivera, and Adame;

5. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:11-cv-01689-GSA-PC; and

6. If Plaintiff fails to comply with this order, this action will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated:   **March 19, 2013**          /s/ Gary S. Austin
                                UNITED STATES MAGISTRATE JUDGE